IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>ANTONIO PHILLIP,<br><br>                Defendant. | 8:19CR205<br><br>FINDINGS AND RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress Evidence and Request for *Franks* Hearing (Filing No. 24) filed by Defendant, Antonio Phillip.  Defendant filed a brief (Filing No. 25) in support of the motion and the government filed a brief (Filing No. 31) in opposition.  The Court held an evidentiary hearing on the motion on October 29, 2019.  Defendant was present with his attorney, Joseph Howard.  The government was represented by Assistant United States Attorney, Gregory D. Artis.  Omaha Police Officers James Haley and Robert Branch, Jr. testified for the government.  Defendant testified on his own behalf.  Exhibit 1 offered by the government and Exhibit 101 offered by Defendant were received by the Court without objection.  A transcript (TR.) of the hearing was prepared and filed on November 14, 2019, (Filing No. 38), and a redacted transcript was filed on November 19, 2019.  (Filing No. 40).  The matter is now fully submitted to the Court.  For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

      Officer Haley and Officer Branch are both Omaha Police Department Officers assigned to the narcotics unit and are part of the Omaha metro area drug task force.  (TR. 6-7, 45).  Near the end of December 2018, Officer Haley and Officer Branch were assigned to follow-up on a complaint that Defendant's seven- or eight-year-old child brought marijuana to school on two occasions.  (TR. 8-9, 46).  Officer Haley was the "point person" for the investigation.  (TR. 47).  Officer Haley ran a DataCheck and criminal history check for Defendant and learned Defendant is a documented gang member and convicted felon with a prior firearms charge and delivery of controlled substance charges.  (TR. 10, 34).  A couple weeks after receiving the complaint, Officer

Haley went to Defendant's apartment at 4527 Decatur Street to do a "knock-and-talk" regarding the complaint, but no one answered the door. (TR. 9).

Officer Haley, Officer Branch, and three other officers wearing plainclothes, black raid vests labeled "Police," and their badges around their necks returned to Defendant's apartment in the evening on January 8, 2019, to again attempt a knock-and-talk to discuss the complaint. Officer Haley, accompanied by Officer Branch and Detective Rock, knocked on Defendant's door. (TR. 11-13, 20-25, 52, Ex. 101). Officer Haley and Officer Branch testified that neither of them was wearing a balaclava face mask, but one or two of the other officers may have been wearing a mask to protect their identities. (TR. 27-28, 35-36, 53). Officer Haley testified that Defendant initially talked to him through the closed door, then briefly walked away, and then came back and opened the door a couple of inches. (TR. 13, 30-31). Officer Branch testified that, to the best of his recollection, after Officer Haley knocked on the door, Branch heard shuffling inside, and a couple minutes elapsed before Defendant cracked open the door and began talking to Officer Haley. (TR. 54-55). Officer Haley and Officer Branch both testified that they smelled the strong odor of marijuana emanating from the apartment when the door was opened. (TR. 16, 48). Officer Haley asked Defendant if officers could step inside to talk to Defendant so as not to "air [Defendant's] business out in front of [his] neighbors" because they were there to discuss Defendant's children. Officer Haley testified that Defendant eventually opened the door all the way and let officers into the apartment by gesturing and saying "okay" or "come on in." (TR. 36-38, 41). Officer Branch similarly testified that Defendant granted officers permission to come inside by opening the door wider and affirmatively stating something like, "come on in." (TR. 55). Both officers testified that Defendant did not attempt to close the door after initially opening it. (TR. 15, 31, 56). Officer Haley testified neither he nor anyone else threatened Defendant or forced their way into the apartment. (TR. 15-16).

After entering the apartment, Officer Haley continued to smell marijuana and saw children sitting on the couch in the living room. Officer Haley commented on the odor of marijuana and Defendant replied, "I told the people at CPS I smoke." (TR. 16). Officer Haley talked to Defendant in the living room while the other officers did a protective sweep of the apartment to make sure there was no one in the back bedrooms or bathroom. Officer Branch assisted in the sweep and testified its purpose was to check for other people. (TR. 48-49). Officer Branch testified he, Detective Rock, and another officer drew their sidearms to conduct the protective sweep, which took approximately one minute. (TR. 58-59). Detective Rock returned to the living room and

reported he saw a spoon with white residue on a dresser in a bedroom. Officer Haley asked Defendant for consent to search the apartment, which Defendant denied. (TR. 17-18, 48).

Officers left the apartment and returned after obtaining a search warrant. The affidavit supporting the warrant generally includes the information testified to by Officer Haley above, including that Defendant "let" Officer Haley into the apartment to talk and that officers found a spoon with white residue during their entry. (Ex. 1). The officers executed the search warrant on January 8, 2019, and recovered marijuana, cocaine, a firearm, and cash. (TR. 18-19). Defendant was arrested (Ex. 101) and was charged on June 19, 2019, in a four-Count Indictment with possession of controlled substances and a firearm. ([Filing No. 1](#)).

Defendant testified regarding the officers' entrance into his apartment. According to Defendant, in the evening on January 8, 2019, his children told him someone was at the front door. Defendant answered the door by opening it all the way. Defendant testified he saw Officer Haley and four other people, including one wearing a ski mask, standing outside his door. Defendant testified he became afraid because of the masked individual, so he tried closing the door, but an officer put his foot in the doorway and Defendant "was overpowered" and "pushed back." (TR. 63-64, 67). Defendant testified Officer Haley did state he wanted to talk about Defendant's son, but Defendant replied, "CPS already talked to me about it," which caused Officer Haley to "start[], you know, going crazy basically." (TR. 64). Defendant testified Officer Haley never spoke to him through the closed door. (TR. 66). Defendant further testified he never said "okay" or "come on in" and did not consent to the officers entering his apartment. (TR. 67).

The officers' interaction with Defendant on January 8, 2019, was not recorded, as no officer was wearing a body camera. Officer Haley testified that no one in the task force is assigned a body camera because of the task force's frequent undercover operations and covert surveillance. (TR. 7, 50).

Defendant argues that when officers first came to his apartment on January 8, 2019, they unlawfully entered his home without a warrant or his consent, which resulted in the discovery of the spoon with the white residue in the bedroom. Defendant contends that the information obtained during officers' first unlawful entry into his apartment was used to obtain the search warrant, and therefore suppression of any items seized during the execution of the warrant, and his subsequent statements after his arrest, require suppression as having been tainted by the illegality. Defendant further asserts he is entitled to a *Franks* hearing because the warrant affidavit contains the false statement that Defendant "opened the door" and "let" officers inside. ([Filing No. 25](#); TR. 73-76).

3

## ANALYSIS

Defendant contends he did not consent to law enforcement officers' initial entry into his apartment. Defendant argues that, because the search warrant affidavit contains information obtained by officers during the unlawful entry, all evidence and statements obtained from the execution of the warrant are tainted and must be suppressed. Defendant's request for a *Franks* hearing is similarly based upon his assertion that the affidavit supporting the warrant contains the false factual statement that Defendant "opened the door" and "let" officers inside. (Filing No. 25).

"[C]onsistent with the Fourth Amendment, the knock-and-talk exception to the warrant requirement permits 'a police officer not armed with a warrant [to] approach a home and knock.'" *United States v. White*, 928 F.3d 734, 739 (8th Cir. 2019)(quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)). But, "[a]bsent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." *United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016). Nevertheless, "Officers may enter the residence if the officers receive voluntary consent to enter from a person possessing authority over the residence." *Id.* (citing *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006)). "Voluntary consent may be express or implied." *Id.* It is the government's burden to show, by a preponderance of the evidence, that consent was freely given by the defendant. See *United States v. Aguilar*, 743 F.3d 1144, 1147 (8th Cir. 2014). A defendant's consent is voluntary if "[i]t was the product of an essentially free and unconstrained choice, rather than the product of duress or coercion, express or implied." *United States v. Morreno*, 373 F.3d 905, 910 (8th Cir. 2004).

Defendant's arguments in this case hinge on the credibility of the testimony offered during the suppression hearing. Did Defendant voluntarily "let" or consent to officers' entry into his apartment, or was the officers' entry made without his voluntary consent? Defendant testified under no uncertain circumstances that he did not consent to officers entering his apartment and that officers "overpowered" him and "pushed him back." Conversely, Officer Haley, an OPD officer for 12-years (TR. 6), and Officer Branch, and OPD officer for 19-years (TR. 45), both testified that Defendant verbally and nonverbally consented to their entry into the apartment. Both officers testified that Defendant initially opened the door a few inches or a "crack," and demonstrated consent for their entry into his apartment by stating "okay" or "come on in" and opening the door wider when Officer Haley asked Defendant if they could speak inside. (TR. 36-38, 41, 55). True, the officers were unsure of the exact verbiage used by Defendant, but both were certain Defendant affirmatively stated something that was the equivalent of "yes" when Officer Haley asked to speak

to Defendant inside. Contrary to Defendant's testimony, Officer Haley testified neither he nor anyone else "forced their way into the apartment," (TR. 16), and both officers testified that Defendant did not attempt to close the door after opening it. (TR. 15, 31, 56). The undersigned finds that the officers' testimony is credible, and that the self-serving testimony of Defendant, a convicted felon with a lengthy criminal history, is not.

Certainly, had officers been wearing body cameras the current dispute could have been avoided, but the failure to record the events in this case does not mean the government cannot meet its burden to show Defendant voluntarily consented through the testimony of officers. There is no evidence that Defendant's age, intelligence, or education inhibited his ability to voluntarily consent. Defendant was not in custody and, according to the officers' testimony, was not threatened or coerced. Although one officer may have been wearing a face mask, officers were wearing vests and badges that clearly identified them as police. Additionally, Defendant is no stranger to law enforcement as he is a known gang member with previous arrests and convictions. In consideration of Officer Haley and Officer Branch's testimony, the undersigned finds that Defendant voluntarily consented to officers' entry into the apartment. See *United States v. Ortega-Montalvo*, 850 F.3d 429, 433 (8th Cir. 2017)(when evaluating consent, "courts consider: (1) age; (2) general intelligence and education; (3) whether the person was intoxicated at the time of consent; (4) whether the person consented after receiving *Miranda* rights; . . . (5) whether the person was aware of his or her rights and protections due to previous arrests[;] . . . (6) the length of detention time; (7) whether the officers acted in a threatening manner; (8) whether officers made any promises or misrepresentations; (9) whether the person was in custody or under arrest when giving consent; (10) whether the person consented in public; and (11) whether the person was silent as the search was conducted.").

Defendant's arguments are based solely on the legality of the officers' initial entry into his apartment. Having concluded that the officers' testimony is credible and that Defendant voluntarily consented to that entry, the undersigned magistrate judge therefore concludes Defendant's motion to suppress and request for a *Franks* hearing should be denied. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge John M. Gerrard that Defendant's Motion to Suppress Evidence and Request for *Franks* Hearing (Filing No. 24) be denied.

Dated this 17th day of December, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.